**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**CATHLEEN FEEHAN, as Special Administratrix of the Estate of William Michael Feehan** — **PLAINTIFF**

**V.** — **CASE NO. 3:16-CV-03060**

**BULL SHOALS LANDING, INC. d/b/a Bull Shoals Lake Boat Dock and Bull Shoals Lake Boat Dock and Marina; BULL SHOALS WHITE RIVER LANDING, INC.; SETH FOX; STEVEN EASTWOLD; RICKY EASTWOLD; CYNTHIA EASTWOLD; KEVIN EASTWOLD; DEANA EASTWOLD; and RYAN EASTWOLD** — **DEFENDANTS/ THIRD PARTY PLAINTIFFS**

**V.**

**JAMES E. HARVEY** — **THIRD PARTY DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Currently before the Court is Third Party Defendant James E. Harvey's Motion to Dismiss (Doc. 17), which seeks dismissal of the Third Party Complaint (Doc. 11) filed by Bull Shoals Landing, Inc. d/b/a Bull Shoals Lake Boat Dock and Bull Shoals Lake Boat Dock and Marina ("Bull Shoals Landing") against Harvey. On September 7, 2016, the Court held a hearing on the Motion to Dismiss and took the matter under advisement. For the following reasons, the Motion is **GRANTED**.

## I. BACKGROUND

On July 27, 2013, Harvey rented a Swift Deck boat called "HECK OF A DECK" from Bull Shoals Landing. When Harvey rented the boat, he signed a rental agreement in which he acknowledged and agreed to the following:

> I do hereby release BULL SHOALS LANDING, INC. and its agents from any responsibility for any accidents or injuries that may occur, either directly, or indirectly, to my passengers, during the time that the rented vessel is in my possession.
>
> I also understand that I am personally responsible for any damages, actual, punitive, or otherwise, to any persons or property that may occur while this vessel is in my possession, and I understand that I will pay any charges assessed by BULL SHOALS LANDING, INC. for damages or losses that may occur while this vessel is in my possession; as well as any attorney or collection fees involved in the collection of same.
>
> I have inspected the vessel in question and have made note of any prior and existing damages to said vessel. I understand that BULL SHOALS LANDING, INC.'S insurance will not extend to cover myself or my passengers and that I must have my own liability insurance.
>
> I have been informed and advised that the law requires that each vessel have, at all times, one Coast Guard approved life preserver for each passenger on the vessel, including the driver; that anyone under the age of twelve years is required by law to wear said life preserver at all times. My signature on this agreement acknowledges the issuance of one life preserver per person and one paddle. I understand that any loss or damage to this equipment is my responsibility and do hereby assume responsibility for same, as assessed by BULL SHOALS LANDING, INC.
>
> I do hereby certify that the driver's license listed above is a valid one and that it belongs to me. My signature on this agreement also certifies as valid, the number of all passengers, including the driver, on said vessel.
>
> I understand that the rental fee is for the time specified and that failure to return vessel at the specified time will result in additional charges to be determined. OPTIONAL: The security deposit is a part of this agreement, and will serve as security for the safe and sound return of said vessel.

(Doc. 11-1).

After Harvey rented the boat and began operating the vessel on Bull Shoals Lake, tragic events ensued. According to the Complaint (Doc. 1), William Feehan, an eight-year-old boy who was one of Harvey's passengers, was riding in a float being pulled behind the rented boat. At the time, the boat was being operated by William's father. The

Complaint alleges that while William was riding on the float, the boat unexpectedly veered hard to the right and caught William in the propeller, leading to his untimely death.

William's mother, Cathleen Feehan, as Special Administratrix of his estate, brought a lawsuit against Bull Shoals Landing and others alleging that the boat had a defect which left it unreasonably dangerous, and that Defendants' negligence in maintaining, assembling, and testing the boat proximately caused William's death. Bull Shoals Landing answered the Complaint by denying liability and asserting a Third Party Complaint against Harvey. (Doc. 11). Ms. Feehan subsequently settled the claims she brought against all Defendants in the original Complaint. *See* Order of Dismissal, Doc. 36. Now the only matter pending before the Court is Bull Shoals Landing's Third Party Complaint and Harvey's Motion to Dismiss it.

The Third Party Complaint alleges that Harvey indemnified Bull Shoals Landing for any responsibility it may have had for liability associated with the vessel. The Third Party Complaint on its face also seems to plead a negligence claim against Harvey, as it states that William's death resulted "from the negligent, careless, and/or reckless conduct of . . . . Harvey." *Id.* at p. 11. However, when the Court questioned Bull Shoal's Landing's attorney on this point during oral argument on the Motion to Dismiss, he averred that the only cause of action that was intended in the Third Party Complaint was for indemnification, and not negligence. The Court memorialized this understanding by the parties by entering a text-only order immediately after the hearing, dismissing any negligence claim from the Third Party Complaint, to the extent such a claim could be construed.

Harvey now asks the Court to dismiss the Third Party Complaint for failure to state a claim for indemnification, pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure. Harvey argues specifically that Arkansas law, rather than federal maritime law, should apply when deciding the validity of the alleged indemnification agreement, but that even under federal maritime law, the agreement still does not amount to an indemnification.

Bull Shoals Landing responds that federal maritime law should apply in deciding this dispute because it contends that Bull Shoals Lake is "navigable." In Bull Shoals Landing's view, entering into a boat rental contract with a marina on a navigable waterway creates exclusive federal maritime jurisdiction. *See In re Aramark Sports & Entm't Servs., LLC*, 2012 WL 3776859, at *2 (D. Utah Aug. 29, 2012) (finding that federal maritime law applied when determining the validity of an alleged indemnification agreement because a substantial number of events in question occurred "on a navigable water of the United States . . . or in connection with navigating a boat on [navigable water]"). Bull Shoals Landing's position on the choice of law question is that the rental agreement amounts to a valid indemnification regardless of whether Arkansas state law or federal maritime law is applied.

## II. LEGAL STANDARD

In reviewing a motion to dismiss, this Court must accept as true all pleaded factual allegations and construe those factual allegations in a light most favorable to the non-moving party, giving the non-moving party the benefit of every reasonable inference. *Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). However, the factual allegations pleaded must "raise more than a speculative right to relief." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008) (internal citations omitted). Moreover,

"[w]here the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Id.* (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997)).

## III. DISCUSSION

In determining the validity and effect of the rental agreement in light of the claims made in the Third Party Complaint, the parties urge the Court to first take up the issue of whether federal maritime law or Arkansas state law should be used to interpret the agreement. The Court finds that it does not need to address the choice of law question, as it is clear that the alleged indemnification agreement does not pass muster under either federal maritime law or Arkansas state law.

Under federal maritime law, it is well settled that a contract of indemnity will not afford protection against consequences of the indemnitee's own act unless the indemnification contract "clearly expresses such an obligation in unequivocal terms." *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981); *see also Sander v. Alexander Richardson Invs.*, 334 F.3d 712, 715 (8th Cir. 2003) ("[I]t is universally agreed that exculpatory clauses, whether fully exonerating a party from its own negligence or not, must 'be clearly and unequivocally expressed.'" (citing *Randall v. Chevron U.S.A., Inc.*, 13 F.3d 888, 905 (5th Cir. 1994)). Arkansas law, like federal maritime law, also requires that an indemnification agreement be expressed in "unmistakable terms." *Chevron U.S.A., Inc. v. Murphy Expl. & Prod. Co.*, 356 Ark. 324, 330 (2004).

A plain reading of the rental agreement does not create an indemnification contract in unequivocal terms. Bull Shoals Landing in essence argues that the fact that the

agreement calls for Harvey to release Bull Shoals Landing from "any responsibility for any accidents or injuries that may occur . . . to my passengers" and for Harvey to take responsibility "for any damages, actual, punitive, or otherwise, to any persons or property that may occur while this vessel is in my possession" creates an unequivocally stated indemnification contract. (Doc. 26, p. 9). Bull Shoals Landing supports this argument by pointing the Court to *In re Aramark Sports & Entertainment Services, LLC*. 2012 WL 3776859 (D. Utah Aug. 29, 2012). Bull Shoals Landing claims that the *Aramark* court "enforced a similar indemnification provision in a boat rental contract . . . ." (Doc. 26, p. 9).

The Court has reviewed the *Aramark* case and finds that Bull Shoals Landing's reliance on it is misplaced. In *Aramark*, a renter had signed an agreement containing a paragraph labeled "Indemnification" that stated that the renter would "indemnify and hold harmless [Aramark] from and against any claims, suits, penalties, obligations, costs and expenses (including reasonable attorney's fees), including claims by Customer or by third parties . . . with respect to injury to persons or damage to property resulting or arising from Customer's use of the Rented Equipment . . . ." 2012 WL 3776859, at *2. In the instant case, though, the word "indemnification" or "indemnify" does not appear in the rental agreement; nor does any word that could imply that a renter would "assume" liability for any action or inaction by Bull Shoals Landing related to the vessel.

Moreover, Harvey's agreement to "release" Bull Shoals Landing from "responsibility for any accidents or injuries that may occur" is not the same as Harvey assuming liability for Bull Shoals Landing's tortious acts or omissions. (Doc. 11-1). One can release an entity from liability without assuming that entity's liability. *Compare* 1 Howard W. Brill, Arkansas Law of Damages § 17:10 ("An indemnity contract is an agreement by one party to give

security to another party against future loss or damage. The first party promises to indemnify, or reimburse, the second party for liability to a third party.") *with* § 17:15 ("A release is a contract, requiring consideration, by which a party frees or relieves another party from an obligation owed.").

Furthermore, the provision of the rental agreement that holds Harvey "personally responsible for any damages . . . to any persons or property" can reasonably be read as an acknowledgment by Harvey that he must take responsibility for any accidents that occur under his watch. Importantly, however, the provision is not an acknowledgment that Harvey must take *sole* responsibility for damages or assume Bull Shoals Landing's responsibility.

Bull Shoals Landing, in its briefing, does not point to any provisions in the rental agreement, other than those discussed above, to support its assertion that Harvey agreed to indemnify Bull Shoals Landing. Thus, the Court concludes that the rental agreement does not create an indemnification agreement under either federal maritime law or Arkansas law.

## IV. CONCLUSION

For the foregoing reasons, Harvey's Motion to Dismiss Third Party Complaint (Doc. 17) is **GRANTED**. Furthermore, the Court finds that it would be futile to allow Bull Shoals to amend its Third Party Complaint to attempt to state a valid claim for indemnification, as the rental agreement does not create an indemnification as a matter of law. Accordingly, the Third Party Complaint (Doc. 11) is **DISMISSED WITH PREJUDICE**. *See Reuter v. Jax Ltd., Inc.*, 711 F.3d 918, 922 (8th Cir. 2013) (noting that leave to amend may be denied

when any amendment would be futile).

**IT IS SO ORDERED** on this 29th day of November, 2016.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE